**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Carol Francois, | No. CV-21-00071-PHX-JAT |
| Petitioner, | **ORDER** |
| v. | |
| United States Citizenship and Immigration Services, et al., | |
| Respondents. | |

Pending before the Court is Defendant United States Citizenship and Immigration Services' ("the government") Motion for Summary Judgment and Motion to Dismiss. (Doc. 9). Plaintiff Sabina Carol Francois has responded (Doc. 14), the government has replied (Doc. 15), and the Court now rules.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a citizen of Trinidad and Tobago. (Doc. 1 at 3; Doc. 10 at 1). She entered the United States in 1983 as a B-2 nonimmigrant visitor. (*Id.*). In February 1992, Plaintiff married a United States citizen, Randolph Barclay. (Doc. 1 at 3; Doc. 10-3 at 4[1]). In March 1993, Barclay filed a spousal visa petition (Form I-130), and Plaintiff filed an application to adjust her status to that of a lawful permanent resident (Form I-485) with the Immigration and Naturalization Service (INS). (Doc. 10-3 at 4).

INS requested that Plaintiff produce her Form I-94 and passport to prove legal

---

[1] Because Plaintiff did not file a controverting statement of facts as required by Local Rule of Civil Procedure ("LRCiv") 56.1(b) and does not otherwise dispute the facts as recited in the government's motion, the Court accepts the facts as provided by the government.

1 entry. (*Id.* at 5). Plaintiff asserted to INS that her Form I-94 and passport had been stolen, and she attempted to establish that she lawfully entered the United States by submitting affidavits. (*Id.*). The INS, however, deemed the affidavits insufficient because they did not clearly establish the date of her entry. (*Id.*).

Accordingly, the INS advised Francois and Barclay to withdraw their pending documents and to request an immigrant visa through a U.S. consulate overseas. (*Id.*). In July 1993, Barclay withdrew the first spousal visa petition, and Plaintiff withdrew her first adjustment of status application. (*Id.*). In July 1994, Barclay filed a new spousal visa petition, which the INS approved in August 1994. (Doc. 10-5 at 4). In December 1994, Plaintiff filed a second application to adjust her status. (*Id.* at 5). In May 1995, the INS interviewed Plaintiff and Barclay regarding the second adjustment application. (*Id.*).

In September 2000, the INS determined that Plaintiff married Barclay to evade immigration laws. (*Id.*). Consequently, the INS issued Barclay a notice of intent to revoke the approved second spousal visa petition and later revoked the petition under 8 U.S.C. § 1154(c). (Doc. 10-3 at 5). In July 2001, the INS denied Plaintiff's second application to adjust her status. Plaintiff and Barclay later divorced. (*Id.*).

Plaintiff subsequently married a second United States citizen, James Earl Voice. (Doc. 1-2 at 4). Voice filed a spousal visa petition for Plaintiff with the United States Citizenship and Immigration Services (USCIS)[2] in October 2006, and Plaintiff filed a third adjustment application the same day. (*Id.*). In July 2007, the USCIS denied Voice's petition under § 1154(c) and, consequently, denied Plaintiff's third adjustment application. (*Id.*). In October 2009, the Board of Immigration Appeals (BIA) vacated the denial because the USCIS had failed to issue Voice a Notice of Intent to Deny before it denied his petition, and the BIA remanded the matter to the USCIS for further action. (*Id.*). In August 2010, the USCIS issued a new decision again denying Voice's spousal visa petition under § 1154(c). (*Id.*).

While proceedings related to Voice's petition were ongoing, Plaintiff filed a

---

[2] On March 1, 2003, the INS ceased to exist as an independent agency. Some of its functions were transferred to the USCIS.

separate application for naturalization (Form N-400) in July 2009, which the USCIS ultimately rejected. *Francois v. United States*, No. CV-16-02936-PHX-BSB, 2017 WL 467976, at *2 (D. Ariz. Feb. 3, 2017).

After the USCIS denied Voice's spousal visa petition in August 2010, Immigration and Customs Enforcement (ICE) issued a Notice to Appear against Plaintiff in February 2011, initiating removal proceedings against her. (Doc. 1-2 at 4). In December 2012, an Immigration Judge (IJ) found that Plaintiff was not a lawful permanent resident and was removable from the United States.[3] (*Id.*).

In September 2013, Plaintiff filed an action in this Court, challenging the denial of Barclay's second spousal visa petition and Plaintiff's second and third adjustment of status applications. *Francois v. Johnson*, No. CV-13-01964-PHX-PGR, 2014 WL 1613932 (D. Ariz. Apr. 22, 2014). Plaintiff also sought an order "compelling USCIS to register her status as a lawful permanent resident." *Id.* at *3. The Court dismissed Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim, and in June 2016, the Ninth Circuit affirmed on jurisdictional grounds. *Francois v. Johnson*, 667 F. App'x 630 (9th Cir. 2016).

In August 2016, Plaintiff filed a second action in this Court, "which challenge[d] the same government actions and [sought] the same relief as the First Action, but allege[d] a negligence action under the [Federal Tort Claims Act] in place of the previously dismissed APA and declaratory relief claims." *United States*, 2017 WL 467976, at *1 (citation omitted). The Court dismissed the second action for lack of subject matter jurisdiction in February 2017. *Id.* Plaintiff did not appeal.

On January 3, 2019, Plaintiff filed another application for naturalization (the "Second N-400 Application"), which the USCIS denied on February 5, 2020. (Doc. 1-2 at 4). Plaintiff administratively appealed, and after a hearing, the USCIS upheld the denial of the Second N-400 Application on December 31, 2020 (the "Final Order"). (Doc.

---

[3] In October 2015, an IJ administratively closed Plaintiff's removal proceedings, and in January 2021, ICE filed a motion to recalendar Francois' removal proceedings. In March 2021, an IJ granted ICE's motion and set Plaintiff's case for an individual hearing in February 2023.

1-2). The USCIS concluded that Plaintiff failed to demonstrate that she had been a lawful permanent resident for at least five years immediately preceding the date of filing the naturalization application. (*Id.* at 3, 6). Relying on *Janjua v. Neufeld*, 933 F.3d 1061 (9th Cir. 2019), the USCIS noted that an IJ had already determined that Plaintiff was not a lawful permanent resident and that the USCIS could not make a finding to the contrary. (*Id.* at 6).

On January 15, 2021, Plaintiff filed the instant action, challenging the denial of Second N-400 Application under 8 U.S.C. § 1421(c) and requesting *de novo* review of the Final Order. (Doc. 1). Plaintiff requests that the Court, "[h]old unlawful and set aside USCIS's denial of her naturalization application as not warranted by the facts and not in accordance with law," "[d]eclare that she is prima facie eligible for naturalization," and "[g]rant naturalization to her." (Doc. 1 at 6).

**II.   DISCUSSION**

    **a.   Motion to Dismiss for Lack of Jurisdiction**

The government's first argues that the Court lacks subject matter jurisdiction over this case. The Court disagrees.

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. The party invoking federal jurisdiction bears the burden of establishing that such jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Court presumes a lack of jurisdiction until the party asserting federal jurisdiction proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Kashkool v. Chertoff*, 553 F.Supp.2d 1131, 1134 (D. Ariz. 2008). In determining whether it has subject matter jurisdiction, a court is not limited to the allegations in the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Rather, the court may look beyond the complaint to extrinsic evidence, without converting the motion to dismiss to a motion for summary judgment, and it need not assume the truth of the complaint's allegations. *Id.*

Here, the basis for the Court's jurisdiction is apparent. As the government acknowledges, 8 U.S.C § 1421(c) provides that a "person whose application for naturalization under this subchapter is denied . . . may seek review of such denial before the United States district court for the district in which such person resides . . . ." "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

The government, however, argues that the Court lacks jurisdiction to "overturn[] the IJ's decision that she is not an LPR." (Doc. 9 at 8). The government correctly notes that under the REAL ID Act, district courts have no role in reviewing immigration judges' determinations. They are instead subject to challenge only in the BIA followed by petition of review to the court of appeals. *See* 8 U.S.C. § 1252(a)(5). But the Ninth Circuit has recognized that "Section 1421(c) plainly confers jurisdiction to review the denial of an application for naturalization on district courts," and "[n]othing in the text limits the jurisdiction so conferred to review of denials when there is no removal proceeding pending." *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004), *as amended* (Sept. 1, 2004).[4]

Resisting this conclusion, the government points to Plaintiff's prior district court cases that were dismissed for lack of jurisdiction, one of which was affirmed on appeal, and argues that the Court should dismiss the instant case as well. But Plaintiff's prior cases involved challenges to the denial of Plaintiff's adjustment of status applications as opposed to a naturalization petition. Challenges to decisions regarding adjustment of status applications are explicitly prohibited by 8 U.S.C. § 1252(a)(2)(B)(i) ("Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under

---

[4] Although the Ninth Circuit decided *De Lara Bellajaro* before the REAL ID Act was passed, the language of 8 U.S.C. § 1421(c) has not changed. Accordingly, the reasoning of *De Lara Bellajaro* continues to apply and § 1421(c) continues to "plainly confer[] jurisdiction" on district courts even when removal proceedings are pending. *See* 378 F.3d at 1046.

- 5 -

[8 U.S.C. §] 1255.").[5] In this case, the Court is not faced with an explicit jurisdictional bar to review adjustment of status applications under 8 U.S.C. § 1252(a)(2)(B)(i), but rather an explicit grant of jurisdiction to consider naturalization applications under 8 U.S.C § 1421(c). The Court cannot ignore this explicit grant of jurisdiction. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) ("[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred.").

The government also argues that the Court exercising jurisdiction in this case and naturalizing Plaintiff would effectively terminate her removal proceedings and undermine 8 U.S.C. § 1252(a)(5), which provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." Other statutes, however, create safeguards to assure that the USCIS and district courts do not interfere with removal proceedings. For example, 8 U.S.C. § 1429 provides that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." If the USCIS denies naturalization on that basis, a district court's review is limiting to reviewing only the USCIS's conclusion that § 1429 applies. *De Lara Bellajaro*, 378 F.3d at 1046.

The USCIS concluded, however, that § 1429 does not apply in this case under Ninth Circuit law. The Final Order states that Plaintiff's petition was not barred by § 1429 because Plaintiff's removal proceedings are not "pursuant to a warrant of arrest." Contrary to other courts, the Ninth Circuit has concluded "warrant of arrest" within the meaning of § 1429 refers to "a writ that issues to arrest and detain an alien" rather than simply a notice to appear. *Compare Yith v. Nielsen*, 881 F.3d 1155, 1165–68 (9th Cir. 2018), *with Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012), *and Gardener v.*

---

[5] Plaintiff also sought mandamus relief from this Court to order the USCIS to adjudicate her N-400 applications. However, at the time, the USCIS had already denied the N-400 application, so there was no N-400 application pending before the USCIS.

- 6 -

*Barr*, No. 4:18 CV 620 (JMB), 2019 WL 1001340, at \*6 (E.D. Mo. Mar. 1, 2019) ("[W]hile there may be some appeal to the Ninth Circuit's analysis, it is ultimately unworkable.").

Because § 1421(c) expressly confers jurisdiction on this Court and § 1429 was not a basis for the USCIS's denial of the Second N-400 Application, the Court concludes that it has subject matter jurisdiction to conduct a *de novo* review of Plaintiff's naturalization application.

**b.     Motion to Dismiss for Failure to State a Claim and Motion for Summary Judgment**

The government next argues that even if the Court has jurisdiction over Plaintiff's petition, Plaintiff is statutorily ineligible to naturalize because she fails to meet the requirements of 8 U.S.C. 1427(a). Accordingly, the government argues that it is entitled to dismissal or summary judgment.

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party asserting "that a fact cannot be or is genuinely disputed must support th[at] assertion by" either "citing to particular parts of materials in the record" or "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1)(A)–(B).

Here, the government argues, and the USCIS found in the Final Order, that Plaintiff "failed to establish that [she is] a lawful permanent resident and ha[s] been a lawful permanent resident for at least five years preceding the date of filing [the Second N-400 Application]" as required by 8 U.S.C. 1427(a). (Doc. 1-2 at 5). The USCIS further stated that "an immigration judge has determined that [Plaintiff is] not a lawful permanent resident and that clear and convincing evidence supports the conclusion that [her] application for adjustment of status was never approved[,]" and the "USCIS cannot make a finding to the contrary. *Janjua v. Neufeld*, 933 F.3d 1061 (9th Cir. 2019)." (Doc. 1-2 at 5–6).

Although *Janjua* discussed the standards for issue preclusion, it did so while "[a]ssuming without deciding that issue preclusion applies in immigration adjustment of status proceedings." 933 F.3d at 1065. *Janjua* did not discuss issue preclusion in the context of a naturalization petition. As discussed above, naturalization proceeds are different, particularly when it comes to district court review under 8 U.S.C § 1421(c). Section 1421(c)'s "grant of authority is unusual in its scope—rarely does a district court review an agency decision de novo and make its own findings of fact." *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000). On the issue of how preclusion principles apply to naturalization proceedings, the Ninth Circuit has not spoken, and various district courts are split. *Compare, e.g.*, *Bigure v. Hansen*, No. 1:16-CV-808, 2017 WL 25503, at *3 (S.D. Ohio Jan. 3, 2017) (concluding that claim preclusion did not apply in part because § 1421(c) requires a court reviewing a naturalization denial to review the denial *de novo* and to "make its own findings of fact and conclusions of law"), *with Ahmad v. Johnson*, No. 16-CV-01776-JCS, 2017 WL 6945395 (N.D. Cal. Oct. 10, 2017), at *9 (determining "that the reasoning in *Bigure* is not persuasive" and "conclud[ing] that Congress did not intend to preclude the application of collateral estoppel in naturalization proceedings based on prior judicial or administrative determinations").

On the record in this case, the Court concludes that the immigration judge's

findings do not have preclusive effect on the USCIS or this Court. "Congress has explicitly stated that the findings of the BIA or an IJ in terminating removal proceedings do not have any effect whatsoever on the question of whether the USCIS should naturalize a person[.]" *Nesari v. Taylor*, 806 F. Supp. 2d 848, 868 (E.D. Va. 2011). Here, the immigration judge concluded that Plaintiff failed to demonstrate that she was a lawful permanent resident as required by 8 U.S.C. § 1429. By its own terms, however, § 1429 provides that

> the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this chapter, *shall not be deemed binding on any way* upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter.

(emphasis added). Accordingly, even assuming general principles of issue and claim preclusion apply to naturalization proceedings, the particular findings at issue in this case specifically have no binding effect under the plain terms of § 1429.

Moreover, the immigration judge's findings in this case were not part of a final judgment. "Collateral estoppel . . . requires that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) (quoting Restatement (Second) of Judgments § 27 (1982)). Here, Plaintiff's removal proceedings were administratively closed for a period and are now ongoing; accordingly, there has been no final judgment. *See Castaneda-Merchan v. Lynch*, 672 F. App'x 499, 500 (5th Cir. 2017) ("Because Castaneda-Merchan's prior deportation proceedings were administratively closed, there was no final judgment.").

The government notes that "Plaintiff never filed an interlocutory appeal with the BIA to challenge [the immigration judge's] decision," but the government cites no authority providing that the failure to file an interlocutory appeal converts a non-final judgment into a "final" order for purposes of collateral estoppel. (Doc. 15 at 2). The

Court is aware of no such authority.

### c. Further Proceedings

Because the Court holds that neither dismissal nor summary judgment are appropriate, the Court will require briefing on how this case should proceed.

Although the USCIS found that 18 U.S.C. § 1429 does not apply in this case, "[the Ninth Circuit] ha[s] recognized that '[t]he natural reading of [§ 1429] is that removal proceedings and final removal orders are to take precedence over naturalization applications.'" *De Lara Bellajaro*, 378 F.3d at 1045; *see also Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004) ("Section 1429 was designed to end this race between the alien to gain citizenship and the Attorney General to deport him. That objective was accomplished by according priority to removal proceedings." (citations omitted)).

Recognizing this policy judgment, several district courts facing similar issues have stayed naturalization proceedings pending the outcome of removal proceedings. *See Adesida v. Tritten*, No. CV 20-1593 (DSD/TNL), 2021 WL 1617149, at *3–4 (D. Minn. Apr. 26, 2021); *Dilone v. Nielsen*, 358 F. Supp. 3d 490, 504–05 (D. Md. 2019); *Gardener v. Barr*, No. 4:18 CV 620 (JMB), 2019 WL 1001340, at *5 (E.D. Mo. Mar. 1, 2019); *Eisa v. United States Citizenship & Immigration Servs.*, No. 05-cv-773, 2005 WL 8164569, at *3 (D. Minn. Dec. 23, 2005), *report and recommendation adopted*, No. 05-cv-773, 2006 WL 8445001 (D. Minn. Jan. 31, 2006).

Accordingly, the parties shall submit briefing addressing whether, given that removal proceeding will likely need to conclude first, there is anything currently ripe for this Court to decide.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the government's Motion for Summary Judgment and Motion to Dismiss, (Doc. 9) is **DENIED**.

///

///

**IT IS FURTHER ORDERED** that within 14 days of the date of this Order, the parties shall simultaneously file briefing addressing how this case should proceed procedurally.

Dated this 4th day of August, 2021.

                                                      *[signature]*
                                                      James A. Teilborg
                                                      Senior United States District Judge