**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Carol Francois,<br><br>　　　　　Petitioner,<br><br>v.<br><br>United States Citizenship and Immigration Services, et al.,<br><br>　　　　　Respondents. | No. CV-21-00071-PHX-JAT<br><br>**ORDER** |

Pursuant to this Court's August 4, 2021 Order, (Doc. 18), Plaintiff Sabina Carol Francois and Defendant United States Citizenship and Immigration Services ("the government") filed briefs to determine whether there is anything currently ripe for this Court to decide. (Doc. 19; Doc. 20). Based on a review of the briefs and the record, and for the following reasons, the Court is staying the case pending removal proceedings.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Sabina Carol Francois is a citizen of Trinidad and Tobago who entered the United States in 1983 as a B-2 nonimmigrant visitor. (Doc. 1 at 3; Doc. 10 at 1). Francois married Randolph Barclay, an American citizen, in February 1992. (Doc. 1 at 3; Doc. 10-3 at 4). Shortly after, Barclay filed a spousal visa petition (Form I-130) with the Immigration and Naturalization Service (INS), seeking to classify Francois as his wife for immigrant visa purposes. (Doc. 10-3 at 4). At the same time, Francois filed an adjustment application (Form I-485) with the INS, seeking to adjust her status to that of a lawful permanent resident. (*Id.*).

As part of the process, INS requested that Francois produce her passport and Form I-94 to prove that she lawfully entered the United States. (*Id.* at 5). She was unable to do so, claiming that they had been stolen. Instead, she submitted affidavits to establish that she lawfully entered the United States. (*Id.*).

But the INS deemed the affidavits insufficient because they did not clearly establish the date of her entry. (*Id.*). The INS advised Francois and Barclay to withdraw their pending documents and to request an immigrant visa through a U.S. consulate overseas. (*Id.*). They did so in July 1993. (*Id.*).

The following year Barclay filed a second spousal visa petition, which the INS approved. (Doc. 10-5 at 4). In December 1994, following the passage of 8 U.S.C. § 1255(i), Francois filed a new application to adjust her status. (*Id.* at 5). In May 1995, the INS interviewed Francois and Barclay regarding the second adjustment application. (*Id.*).

Following the interview, the INS determined that their marriage was fraudulent. (*Id.*). Consequently, in September 2000, the INS issued Barclay a notice of intent to revoke the approved second spousal visa petition and later revoked the petition under 8 U.S.C. § 1154(c). (Doc. 10-3 at 5). The INS then denied Francois' second application to adjust her status because there was no approved spousal visa petition. Francois and Barclay later divorced. (*Id.*).

Francois then married a second United States citizen, James Earl Voice. (Doc. 1-2 at 4). Voice filed a spousal visa petition for Francois with the United States Citizenship and Immigration Services (USCIS) in October 2006.[1] Francois filed a third adjustment application that same day. (*Id.*). In July 2007, the USCIS denied Voice's spousal visa petition under § 1154(c), finding that Voice and Francois had failed to establish the legitimacy of their marriage. (*Id.*) Consequently, Francois' third adjustment application was also denied. (*Id.*). She then filed a separate application for naturalization (Form N-400), which the USCIS ultimately rejected. *Francois v. United States*, No. CV-16-02936-PHX-BSB, 2017 WL 467976, at *2 (D. Ariz. Feb. 3, 2017).

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency. Some of its functions were transferred to the USCIS.

After the USCIS denied Voice's spousal visa petition in August 2010, Immigration and Customs Enforcement (ICE) issued a Notice to Appear against Francois in February 2011, initiating removal proceedings against her. (Doc. 1-2 at 4). In December 2012, an Immigration Judge (IJ) found that Francois was not a lawful permanent resident and was removable from the United States. (*Id.*).

In September 2013, Francois filed an action in this Court, challenging the denial of Barclay's second spousal visa petition and Francois' second and third adjustment of status applications. *Francois v. Johnson*, No. CV-13-01964-PHX-PGR, 2014 WL 1613932 (D. Ariz. Apr. 22, 2014). Francois also sought an order "compelling USCIS to register her status as a lawful permanent resident." *Id.* at *3. The Court dismissed Francois' claims for lack of subject matter jurisdiction and failure to state a claim, and the Ninth Circuit affirmed. *Francois v. Johnson*, 667 F. App'x 630 (9th Cir. 2016). In the meantime, an IJ administratively closed Francois' removal proceedings, citing a backlog in the immigration courts.

In September 2016, Francois filed a second action in this Court, challenging the "same government actions and seek[ing] the same relief as the First Action, but alleg[ing] a negligence action under the [Federal Tort Claims Act] in place of the previously dismissed APA and declaratory relief claims." *Francois v. United States*, 2017 U.S. Dist. LEXIS 15477, at *3 (citation omitted). The Court dismissed the second action for lack of subject matter jurisdiction in February 2017. *Id.* Francois did not appeal.

On January 3, 2019, Francois filed another application for naturalization (the "Second N-400 Application"), which the USCIS again denied on February 5, 2020. (Doc. 1-2 at 4). Francois administratively appealed, and after a hearing, the USCIS upheld the denial of the Second N-400 Application on December 31, 2020 (the "Final Order"). (Doc. 1-2). The USCIS concluded that Francois failed to demonstrate that she had been a lawful permanent resident for at least five years immediately preceding the date of filing the naturalization application. (Id. at 3, 6). Relying on *Janjua v. Neufeld*, 933 F.3d 1061 (9th Cir. 2019), the USCIS noted that an IJ had already determined that Francois was not a

lawful permanent resident and that the USCIS could not make a finding to the contrary. (Id. at 6).

Following the denial of Francois' naturalization application, ICE filed a motion to recalendar Francois' removal proceedings. In March 2021, an IJ granted ICE's motion and set Francois' case for an individual hearing in February 2023. (Doc. 10-4 at 3).

Francois filed the instant action on January 15, 2021, challenging the denial of Second N-400 Application under 8 U.S.C. § 1421(c) and requesting de novo review of the Final Order. (Doc. 1). Francois requests that the Court, "[h]old unlawful and set aside USCIS's denial of her naturalization application as not warranted by the facts and not in accordance with law," "[d]eclare that she is prima facie eligible for naturalization," and "[g]rant naturalization to her." (Doc. 1 at 6).

In an order this past August, the Court denied the government's Motion for Summary Judgment and Motion to Dismiss, concluding that the Court has subject matter jurisdiction to conduct a *de novo* review of Francois' naturalization application under 8 U.S.C. § 1421(c). (Doc. 9). The Court further ordered the parties to file briefs that address how this case should proceed procedurally and whether "there is anything currently ripe for this Court to decide." (Doc. 9 at 10).

**II.    DISCUSSION**

If a naturalization application is denied, the applicant may seek judicial review with a federal district court. 8 U.S.C. § 1421(c). Francois contends that the Court should proceed in deciding the case because it has jurisdiction and can grant relief for Francois. Specifically, Francois argues that the Immigration Judge will not "have jurisdiction to review this threshold issue." (Doc 20 at 2). Additionally, Francois claims that staying the case only incentivizes the government to circumvent the appeals process by placing applicants in removal proceedings. (*Id.* at 3). The government counters that the question of Francois' eligibility to naturalize will not be ripe for judicial review until removal proceedings conclude and that the proceedings will bear on the merits of Francois' application. (Doc. 19 at 2–3). The government also asserts that removal proceedings should

take precedence over naturalization applications. (*Id.* at 2).

Much of this dispute exists due to the structure of the naturalization process. Today, the executive branch has the primary responsibility for deciding who may become a United States citizen. The Attorney General has the sole authority to "naturalize persons as citizens," 8 U.S.C. § 1421(a), and removal proceedings are conducted by immigration judges appointed by the Attorney General. 8 U.S.C. § 1229(a)(1). The courts' role is to provide judicial review of the executive agency's actions. 8 U.S.C. § 1421(c).

The naturalization process was not always structured like this. In the past, naturalization and removal were vested in different branches of the government, with courts having the authority to naturalize, while the authority to remove aliens was vested in the Attorney General. *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1045 (9th Cir. 2004). Because of the two-track structure, "it was possible for naturalization and removal proceedings to advance simultaneously." *Ajlani v. Chertoff*, 545 F.3d 229, 236 (2d Cir. 2008). And since "neither proceeding had priority over the other . . . an alien could find himself in a race against the government, with the alien pressing the court to grant him citizenship before the government could order his removal from the country." *Dilone v. Nielsen*, 358 F. Supp. 3d 490, 495 (D. Md. 2019) (citing *Shomberg v. United States*, 348 U.S. 540, 544 (1955)). If a petitioner was successful in their naturalization petition, "the deportation proceedings were completely nullified." *Shomberg*, 348 U.S. at 544.

To end this race, Congress enacted 8 U.S.C. § 1429 to provide that "no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding." *Bellajaro*, 378 F.3d at 1045 (quoting 8 U.S.C. § 1429 (1952)). This "priority provision" ensures that deportation proceedings take precedence over an alien's attempts to naturalize. *See Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004); *Ajlani*, 545 F.3d at 240 (explaining that allowing petitioner to proceed on the naturalization application would restart the race between removal and naturalization Congress sought to end). In the Immigration Act of 1990, Congress gave the Attorney General the "sole authority to naturalize." 8 U.S.C. § 1421(a).

Although this Court held in a prior order in this case (Doc. 8 at 6) that 8 U.S.C. § 1429 does not apply, congressional intent to prioritize removal proceedings over naturalization proceedings guides this Court's decision. Other courts have consistently stayed naturalization proceedings to give priority to removal proceedings. *See Dilone*, 358 F. Supp. 3d at 504–05 (staying the case to prioritize the conclusion of removal proceedings); *Adesida v. Tritten,* No. 20-1593 (DSD/TNL), 2021 U.S. Dist. LEXIS 79436 (D. Minn. Apr. 26, 2021); *Gardener v. Barr*, No. 4:18 CV 620 (JMB), 2019 U.S. Dist. LEXIS 32866 (E.D. Mo. Mar. 1, 2019) (same); *Eisa v. United States Citizenship & Immigration Servs.*, 2005 U.S. Dist. LEXIS 46561(D. Minn. Dec. 23, 2005), report and recommendation adopted, No. 05-cv-773, 2006 U.S. Dist. LEXIS 97592 (D. Minn. Jan. 31, 2006) (remanding to USCIS and staying the case until after removal proceedings). In *Dilone*, the court concluded that while the court had subject matter jurisdiction and was authorized to order relief, it decided to stay the case to let the removal proceedings to run their course. 358 F. Supp. 3d at 504. The court argued that to proceed with the case while removal proceedings were pending would "in effect, restart the 'race' that Congress sought to end when it gave removal proceedings priority over naturalization adjudications in 1950." *Id.* Similarly, in *Adesida*, the court found that, while it had jurisdiction to hear the case, the proper action was to let the removal outcomes proceed because of congressional intent to prioritize removal proceedings. 2021 U.S. Dist. LEXIS 79436, at *9.

Francois attempts to distinguish these decisions by highlighting that those cases were in the middle of pending "removal proceedings." (Doc. 20 at 3). In contrast, "USCIS already adjudicated Ms. Francois' N-400 application." (*Id.*). Furthermore, Francois argues that the Court is better suited to hear the case as the IJ cannot change the discretionary decisions made by USCIS. (*Id.* at 2).

These arguments are unavailing. While the IJ cannot make a finding as to the discretionary grant or denial of adjustment by USCIS, (Doc. 20 at 2), the IJ can make factual findings about Francois' status in the country that bear on the merits of her naturalization application. *See Adesida,* 2021 U.S. Dist. LEXIS 79436, at *10 ("[T]here

may be factual determinations made during removal proceedings that could bear on the merits of Adesida's application."); *Ajlani*, 545 F.3d at 240 (suggesting that information regarding the sufficiency of petitioner's naturalization application may need to be addressed in removal proceedings); *Dilone*, 358 F. Supp. 3d at 503–04 (noting that factual findings in removal proceedings may impact applicant's burden to establish the "good moral character" requirement for naturalization). Indeed, in an earlier iteration of this case, the Ninth Circuit noted that "under the specific facts of this case, the denial of Francois' adjustment application will not be ripe for judicial review until removal proceedings conclude before the agency." *Francois v. Johnson*, 667 Fed. Appx. 630, 631 (9th Cir. 2016).

Under Ninth Circuit precedent this Court has "jurisdiction pursuant to 1421(c) to review [USCIS's] denial of [Plaintiff's] application for naturalization whether or not a removal proceeding is pending, but that review is limited to 'such' denial." *Bellajaro*, 378 F.3d at 1047. But to decide on the validity of Francois' application would effectively end her removal proceedings. *See, e.g.*, *Omo v. Barrett*, No. C 11-04975 CRB, 2012 U.S. Dist. LEXIS 20921 (N.D. Cal. Feb. 17, 2012) (declining to proceed with the case because a finding on their part would directly affect the removal proceedings). Such a result is "contrary to congressional intent to end the race between two processes." *Gardener*, 2019 U.S. Dist. LEXIS 32866, at *15–16. As the Seventh Circuit explained, "[t]he existence of overlapping proceedings does not diminish a district court's power but does present a question on which the judge should exercise sound discretion." *Klene v. Napolitano*, 697 F.3d 666, 669 (7th Cir. 2012). As a result, the Court finds the prudent course of action is to stay this case pending the outcome of removal proceedings. *Adesida*, 2021 U.S. Dist. Lexis 79436, at *10.

### III. CONCLUSION

Though § 1447(b) grants the Court jurisdiction to determine the matter, the Court believes the most appropriate action is to stay the matter pending completion of the removal proceedings. Accordingly, the Court will direct the Clerk of Court to administratively close

the case. Either party may file a motion to reopen proceedings here at the conclusion of removal proceedings.

For the foregoing reasons,

**IT IS ORDERED** that this matter is stayed until further order of the Court.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case, subject to reopening by motion by either party.

**IT IS FURTHER ORDERED** that, within 14 days of the conclusion of the removal proceedings, the parties shall inform the Court of the outcome and shall propose a schedule for further proceedings.

Dated this 21st day of September, 2021.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge