**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Carol Francois, | No. CV-21-00071-PHX-JAT |
| Petitioner, | **ORDER** |
| v. | |
| United States Citizenship and Immigration Services, et al., | |
| Respondents. | |

In this action Plaintiff Sabina Carol Francois, a citizen of Trinidad and Tobago, challenges the denial of her second naturalization application by Defendant United States Citizenship and Immigration Services ("USCIS").[1] The Court stayed the case in September of 2021 until the conclusion of removal proceedings against Plaintiff in immigration court. (Doc. 21). Plaintiff has now filed a motion to reopen the case, arguing the prerequisites in the Court's September 2021 order have been met. (Doc. 27). Defendants responded, opposing that motion, (Doc. 30), and Plaintiff replied, (Doc. 31). The Court now rules.

**I.   BACKGROUND**[2]

Plaintiff is a citizen of Trinidad and Tobago who entered the United States in 1983 as a B-2 nonimmigrant visitor. (Doc. 1 at 3; Doc. 10 at 1). Nearly ten years later she married a United States citizen, after which the Immigration and Naturalization Service ("INS")

---

[1] The Department of Homeland Security ("DHS"), and (in their official capacities) the Director of USCIS, the acting Secretary of DHS, and the Phoenix USCIS Field Office Director, are also defendants.
[2] The Court has previously recounted much of the factual and procedural history of this case in greater detail. (Docs. 18 at 1–4; 21 at 1–4).

approved a spousal visa application for Plaintiff. (Docs. 1 at 3; 10-3 at 4; 10-5 at 4). But INS later determined that this marriage was fraudulent, revoked the spousal visa, and denied Plaintiff's application to adjust her status. (Docs. 10-3 at 5; 10-5 at 5).

Plaintiff divorced the first United States citizen and, three months later, married a second Unites States citizen. (Doc. 1-2 at 4). Several years after this second marriage she filed an adjustment of status application in connection with a new spousal visa application, which were both denied following a USCIS[3] determination that the previous marriage fraud finding barred approval of the new application. (Doc. 1-2 at 4). In 2009 Plaintiff also filed an application for naturalization, which was rejected. (Doc. 21 at 2 (citing *Francois v. United States*, No. CV-16-02936-PHX-BSB, 2017 WL 467976, at *2 (D. Ariz. Feb. 3, 2017))).

In 2013 and again in 2016 Plaintiff filed actions in this Court challenging the denials of one of the spousal visa petitions and two of the adjustment of status applications. *Francois v. Johnson*, No. CV-13-01964-PHX-PGR, 2014 WL 1613932 (D. Ariz. Apr. 22, 2014), *aff'd*, 667 Fed. App'x 630 (9th Cir. 2016); *Francois v. United States*, 2017 WL 467976, at *1. These actions were dismissed for lack of subject matter jurisdiction and for failure to state a claim. Meanwhile, USCIS had begun removal proceedings against Plaintiff in 2011, and an immigration judge ("IJ") found in 2012 that Plaintiff was not a lawful permanent resident of the United States and was removable. (Doc. 1-2 at 4–6). But in 2015 an IJ administratively closed those proceedings, in part to await disposition of Plaintiff's appeal to the Ninth Circuit Court of Appeals. (Doc. 31-2 at 7–8).

In January 2019, Plaintiff filed a second application for naturalization, which USCIS denied in February 2020. (Doc. 1-2 at 3). USCIS upheld that denial at the end of December 2020. (Doc. 1-2 at 3–6). Plaintiff then filed her complaint in this case on January 15, 2021, challenging that denial.

DHS, meanwhile, had moved ten days earlier to recalendar Plaintiff's administratively closed removal case, which the immigration court granted over Plaintiff's

---

[3] On March 1, 2003, the INS ceased to exist as an independent agency. Some of its functions were transferred to the USCIS.

opposition in March of 2021, scheduling a hearing for February 2023. (Docs. 10-4 at 2–3; 14 at 5; 19 at 2; 20 at 2–3; 31-1 at 3). Once the IJ granted DHS's motion to recalendar, Defendants moved this Court to dismiss this case or to grant summary judgment in Defendants' favor, arguing that the Court lacked jurisdiction, that Plaintiff had failed to state a claim, and that there was no genuine dispute of material fact whether Plaintiff is a lawful permanent resident because prior administrative findings on that issue have preclusive effect in this Court. (*See* Doc. 18 at 4–10). The Court rejected Defendants' arguments, including the argument that ongoing removal proceedings deprived this Court of jurisdiction. (*See id.*). But in September 2021 the Court concluded that the appropriate course, considering Congress's intent to prioritize removal proceedings over naturalization proceedings, was to stay the case pending the conclusion of the removal proceedings. (Doc. 21 at 4–8).

Back in immigration court, two hearings were held before the initially scheduled February 2023 hearing, both of which Plaintiff and her counsel failed to attend. (Doc. 27 at 4). When Plaintiff failed to attend the second hearing in August of 2022, the IJ issued an order administratively closing the case. (*Id.*). Plaintiff, through her counsel, claimed in a declaration filed with the immigration court that she was never notified of the hearings because the IJ sent the notices to the wrong address. (*See* Docs. 30-1 at 8; 31 at 2; 31-1 at 1–4).

The form order the IJ used provided four checkable boxes with possible reasons for administrative closure: (1) a joint request by the parties; (2) an opposed request by one party where the opposing party had "not presented a persuasive reason why the proceedings should not be administratively closed"; (3) incarceration of the respondent; and (4) "[o]ther." (*See* Doc. 27 at 4).

The IJ checked the second and fourth boxes. (*Id.*). In explaining her selection of "other," she wrote:

> Neither respondent nor respondent's counsel appeared for this hearing or for the prior hearing. Counsel was never released from representation of the respondent. The Court attempted to contact counsel by telephone but was unable to reach her. Counsel is directed to file a written explanation with the

- 3 -

>court, no later than September 2, 2022, explaining her multiple absences. A copy of this order will be sent to the respondent at her last known address . . . .

(*Id.*). Following this administrative closure, Plaintiff filed the instant motion in this case. (Doc. 27).

## II.     DISCUSSION

Plaintiff argues that the IJ's administrative closure of her removal proceedings constitutes a completion of those proceedings such that the Court should lift its stay. (Doc. 27 at 1). Defendants argue that administrative closure is not the same thing as completion, and that the stay should therefore remain in place. (Doc. 30 at 1–4). The Court agrees with Defendants' assertion that "administrative closure" is not "completion," but disagrees that this necessarily means the stay should not be lifted.

The Court, as noted, stayed the case "pending completion of the removal proceedings." (Doc. 21 at 7). Specifically, the Court ordered the matter "stayed until further order of the Court," ordered the case "administratively close[d] . . . subject to reopening by motion by either party," and ordered the parties to, "within 14 days of the conclusion of the removal proceedings, . . . inform the Court of the outcome and . . . propose a schedule for further proceedings." (*Id.* at 8).

As Defendants correctly assert, Plaintiff's removal proceedings could, theoretically, resume at any time: "Administrative closure does not result in a final order, and [DHS] may always move to recalendar the case or seek immediate review of the decision." *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 891 (9th Cir. 2018) (citing *Matter of Avetisyan*, 25 I. & N. Dec. 688, 695 (BIA 2012)). The facts of this case illustrate this possibility, as Plaintiff's own removal proceedings were administratively closed in 2015 but recalendared in 2021. Plaintiff's removal proceedings thus cannot be said to be "complete" or to have "concluded." The expressly contemplated condition for lifting the stay in this case has therefore not been met.

But this is not to say that the stay can never be lifted for another reason. As the Court has previously indicated, its stay of this case is a prudential exercise of discretion with a

view toward respecting Congressional intent, not a necessity mandated by any statutory limitation of the Court's power. (Doc. 21 at 7 (citing *Klene v. Napolitano*, 697 F.3d 666, 669 (7th Cir. 2012)). While the Court has "inherent power to control the disposition of the causes on its docket," it has less flexibility in imposing stays than in deciding other matters entrusted to its discretion, and must balance the concerns justifying the stay against the interest in preventing "the ossification of rights which attends inordinate delay." *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000) (cleaned up). In other words, "the length of the stay" is balanced "against the strength of the justification given for it." *Id.* Thus, a justification which is sufficient for a shorter stay may be insufficient for a longer stay.

The IJ's reasons for administratively closing the removal proceedings could potentially affect both sides of this equation, and are therefore relevant to the Court's decision whether to lift the stay. Plaintiff argues that the IJ closed the proceedings because "a persuasive reason had not been presented for opening the proceedings," and "was fully aware that [Plaintiff] was seeking judicial review of USCIS's denial in this Court." (Doc. 31 at 1–2). Defendants argue that failures of Plaintiff and Plaintiff's counsel to appear at the immigration hearings led the IJ to conclude that there "was no good reason for immigration proceedings to continue in their absences." (Doc. 30 at 2).

Both readings are broadly plausible. It is possible, as Defendants argue, that the IJ, in indicating that she administratively closed the case because there was no persuasive reason not to do so, and in demanding an explanation of Plaintiff's absence, meant to convey that the case was closed because Plaintiff had not attended. This is perhaps the most obvious reading from the face of the order.

But it seems somewhat unlikely that the IJ would, either as an inducement to participate or as a reprimand, have indefinitely suspended proceedings that could well end with the Plaintiff's removal from the country—particularly if the IJ could simply have continued the hearing, or, as the immigration court's notice states, have had Plaintiff taken into custody. (*See* Doc. 10-4 at 3). Indeed, any responsibility of a respondent for contributing to a delay is a factor which usually cuts *against* granting a request for

administrative closure. *See Hussaini v. Lynch*, 644 Fed. App'x 403, 407–08 (6th Cir. 2016) (citing *Avetisyan*, 25 I. & N. Dec. at 696).

Further, given Plaintiff's counsel's declaration explaining her absences and suggesting a willingness to appear at future hearings, (*see* Doc. 31-1 at 2–3), it is unclear why Defendants would need Plaintiff's consent to have the case recalendared—unless, of course, the IJ's real reason for administrative closure is something other than Plaintiff's absences. *Compare* (Doc. 30 at 3) (suggesting that Plaintiff's consent is necessary for recalendaring), *with Matter of W-Y-U*, 27 I. & N. Dec. 17, 18, 20 n.5 (BIA 2017) (citations omitted) (stating that either party may move to recalendar, and that neither party has an absolute veto).

On the other hand, it is also possible, as Plaintiff suggests, that the IJ, without explicitly saying so, closed the case to permit Plaintiff to pursue relief in this Court, and in doing so merely took a convenient opportunity to demand an explanation for Plaintiff's absence. This reading is supported by the broad purpose of administrative closure. *See Avetisyan*, 25 I. & N. Dec. at 692 ("In general, administrative closure may be appropriate to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time."). But the fact that the IJ checked the "other" box as a reason why the case was closed before going on to discuss Plaintiff's absences undercuts this reading. So does the relative improbability of the IJ not explaining the real reason for closing the case but taking the time to discuss an irrelevant issue.

All of this is to say that the Court cannot, from the face of the IJ's order and based on the present record, confidently discern the reason that the IJ administratively closed the removal proceedings. It is possible that the IJ did so to await an action from this Court in this case. *See id.* at 696 (listing "the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings" as a relevant factor in deciding whether to administratively close a case). If that is so, leaving the stay in place could put Plaintiff in a sort of indefinite adjudicative limbo. Thus, although

the Court will deny Plaintiff's motion because Plaintiff has not shown the stay should be lifted, the denial will be without prejudice.

The Court will also order the parties to file a joint motion in Plaintiff's removal case, respectfully requesting clarification of the reasons for the IJ's administrative closure of the case. The Court presumes that if evidence existed in the immigration court record or elsewhere which clarified the IJ's reasons for administratively closing the case, the party whose argument that evidence supported would have submitted that evidence to the Court in connection with this motion.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's motion to lift the stay and reopen the case (Doc. 27) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that the parties to this case who are also parties to Plaintiff's removal proceedings shall, within 30 days, jointly file one motion in that case requesting clarification of the reasons for the IJ's order of August 19, 2022.

**IT IS FINALLY ORDERED** that a party moving to reopen this case shall attach to such motion the IJ's written response to the above-ordered motion for clarification, or shall detail efforts to comply with this order and explain why, given the Court's concerns as discussed above, that party has filed a motion to reopen without attaching the IJ's written response or without otherwise complying with this order.

Dated this 10th day of August, 2023.

James A. Teilborg
Senior United States District Judge